IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

**ERICA REINERS**, individually and on behalf of all others similarly situated,

       Plaintiff,

v.

**PARAGON FITNESS, LLC d/b/a PARAGON FITWEAR, LLC**, a Michigan limited liability company,

       Defendant.

**CLASS ACTION COMPLAINT AND JURY DEMAND**

    1.    Plaintiff Erica Reiners ("Reiners" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Paragon Fitness, LLC d/b/a Paragon Fitwear, LLC ("Paragon" or "Defendant") to stop its practice of placing unsolicited telemarketing text message calls to cellular telephone users nationwide without obtaining prior express written consent, and to obtain redress for all persons similarly injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

    2.    The Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or "Act"), and its implementing regulations, 47 C.F.R. § 64.1200, *et seq.*, prohibit companies, such as Defendant, from placing text message calls using an automatic telephone dialing system ("ATDS") to cellular telephones without first obtaining prior express written consent. In this

1

case, Paragon has violated, and continues to violate, the TCPA and its regulations by placing SMS messages to cellular phone subscribers who have not provided prior express written consent to receive such text messages.

## PARTIES

3. Plaintiff Erica Reiners is a natural person and a resident of Denver, Denver County, Colorado.

4. Defendant Paragon Fitness, LLC is a limited liability company organized and existing under the laws of the State of Michigan with a principal place of business located at 1070 Cameron Wood Dr. SE, Ada, Michigan 49301. Defendant conducts business throughout the United States, the State of Colorado, and this District.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court also has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, because the alleged Class consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA apply.

6. This Court has personal jurisdiction over Defendant because Defendant conducts a significant amount of business in this District, directed the text messages at issue to Plaintiff who is located in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant

conducts a significant amount of business within this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## COMMON FACTUAL ALLEGATIONS

8. Paragon operates an online athletic apparel store that markets fitwear to women.

9. In an effort to boost Paragon's business and drive sales, Defendant utilized bulk text messaging to reach consumers.

10. The text messages were for telemarketing purposes and offered, advertised, and announced the availability of Paragon's goods or services.

11. Bulk text messaging, or SMS messaging, has emerged as a direct method of communicating with consumers. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

12. When an SMS message call is successfully made, the recipient's cell phone rings or vibrates, alerting him or her that a call is being received. As cellular telephones are mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

13. In sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential

numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

14. Unfortunately for consumers, Paragon fails to obtain consumers' prior express written consent to place the text messages as required by the TCPA.

15. The text messages were made by or on behalf of Defendant, with Defendant's knowledge and approval. Defendant has knowingly received the benefit of the calls and has ratified the making of the calls.

16. At all times material to this Complaint, Defendant was and is fully aware that unsolicited telemarketing text messages are being made to consumers' cellular telephones through its own efforts and through the efforts of its agents.

17. Defendant knowingly made (and continues to make) unsolicited telemarketing text messages without the prior express written consent of the recipients. In so doing, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

**FACTS SPECIFIC TO PLAINTIFF REINERS**

18. Plaintiff is the owner and customary user of the cellular telephone number ending in 3911.

19. In or around May 2020, Plaintiff visited Paragon's website www.paragonfitwear.com. Upon finding an item of interest, Plaintiff added the item to her virtual "shopping cart" to determine the shipping rate associated with the purchase.

20. To determine the shipping rate, Plaintiff entered her contact information and shipping address into Paragon's checkout page.

21. Under the section of the Paragon's checkout page titled "Contact Information", Plaintiff unchecked a box requesting that she "Sign up for exclusive offers and news via text messages and/or email". Plaintiff then selected "Continue to shipping".

22. On Paragon's Shipping page, Plaintiff reviewed the shipping costs and determined that she was no longer interested in purchasing any item. Then, she closed out of Paragon's website.

23. On May 26, 2020, Plaintiff received an unsolicited text message call to her cellular telephone from Paragon from the telephone number (857) 702-1827, which read, "Hey Erica, this is Sarah from Paragon Fitwear. I see you're looking at our Columbia Crop Top. Great choice :) Any questions I can answer for you? PS: msg. & data rates may apply. Let me know if you want me to stop texting."

24. Upon receiving the text message call, Plaintiff responded "Stop" to opt-out of receiving future texts and calls.

25. Paragon responded with an automatically generated text message stating "You have successfully been unsubscribed. You will not receive any more messages from this number. Reply START to resubscribe." This is clear evidence that an ATDS was utilized to send the text messages.

26. A screenshot of the May 26th text message call is reproduced on the following page:



27.     The ten digit number that the text messages originated from results in an error message when called.

28.     Plaintiff has never requested that Paragon send text messages to her or offer her its services in any way.

29.     Nevertheless, Paragon utilized automated text messaging to solicit Plaintiff. The text message advertised the availability of Paragon's products and services.

30.     On information and belief, the text messages were sent *en masse* to hundreds if not thousands of consumers.

31.     Notably, Paragon's website requests that consumers agree to be contacted by

Paragon via an ATDS when making a purchase. Specifically, its website states as follows:

> I consent to receive recurring automated marketing by text message through an automatic telephone dialing system. Consent is not a condition to purchase. STOP to cancel, HELP for help. Message and Data rates apply.

(*See* Paragon website, www.paragonfitwear.com.)

32.     This language further demonstrates that Paragon utilizes an ATDS to place text messages to consumers. However, Plaintiff never consented to be called or texted by Paragon.

33.     By sending unauthorized telemarketing text message calls as alleged herein, Paragon has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy.

34.     The texts disturbed and interfered with Plaintiff's use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone.

35.     In the present case, a consumer could be subjected to many unsolicited text messages, and continuous repeated invasions of privacy.

36.     To redress these injuries, Plaintiff, on behalf of herself and a Class of similarly situated individuals defined below, brings suit under the TCPA, which prohibits unsolicited voice and text calls to cellular telephones.

37.     On behalf of the Class, Plaintiff seeks an injunction requiring Paragon to cease all unauthorized text messaging activities and an award of statutory damages to the class members, together with costs, pre and post-judgment interest, and reasonable attorneys' fees.

## CLASS ALLEGATIONS

38.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2)

and Rule 23(b)(3) on behalf of herself and the Class defined as follows:

> **No Consent Class**: All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the Class; (2) received at least one text message from Defendant, or a third person acting on behalf of Defendant; (3) on the person's cellular telephone; (4) for the purpose of selling Defendant's products or services; (5) using the same dialing system that was used to send the text messages to Plaintiff; and (6) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send text messages to Plaintiff.

39. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys and Defendant's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

40. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant sent autodialed text messages to thousands of consumers who fall into the definition of the defined Class. Class members can be identified by reviewing Defendant's call records.

41. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct. Defendant has no defenses unique to Plaintiff.

42. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Class.

43. **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   (a) Whether Defendant's conduct violated the TCPA;

   (b) Whether Defendant systematically sent unsolicited text messages to consumers absent prior express written consent;

   (c) Whether Defendant sent the text messages using an automatic telephone dialing system;

   (d) Whether Plaintiff and the class members are entitled to statutory damages; and

   (e) Whether Plaintiff and the class members are entitled to treble damages based on the willfulness of Defendant's conduct.

44. **Superiority & Manageability:** This case is also appropriate for class certification under Rule 23(b)(3) because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the

damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured. Also, there are no pending governmental actions against Defendant for the same conduct.

45. **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendant has acted or refused to act on grounds substantially similar towards all members of the Class so as to render certification of the Class for final injunctive relief and corresponding declaratory relief appropriate under Rule 23(b)(2).

**CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227,** *et seq.*
**(On Behalf of Plaintiff and the No Consent Class)**

46. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

47. Defendant failed to obtain any prior express written consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

48. Further, Defendant and/or its agent transmitted unsolicited telemarketing text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

49. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

50. These text messages were sent randomly and/or made *en masse* and without the prior express written consent of the Plaintiff and the other members of the No Consent Class to receive such wireless spam.

51. Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

52. As a result of such conduct, Plaintiff and the other members of the No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

53. In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages

recoverable by Plaintiff and the other members of the No Consent Class.

54. Plaintiff is also entitled to injunctive relief and corresponding declaratory relief to ensure that the calls stop.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Erica Reiners, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the No Consent Class as defined above, appointing Plaintiff Erica Reiners as the representative of the Class, and appointing her counsel as Class Counsel;

B. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

C. An order declaring that Defendant's actions, as set out above, violate the TCPA;

D. A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

E. An injunction requiring Defendant to cease all unsolicited text messaging activities, and otherwise protecting the interests of the Class;

F. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above;

G. An award of treble damages if willfulness is shown; and

H. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be tried.

                                      Respectfully Submitted,

                                      **ERICA REINERS**, individually and on behalf of a Class of similarly situated individuals

Dated: July 27, 2020             By: */s/ Taylor T. Smith*
                                          One of Plaintiff's Attorneys

                                      Steven L. Woodrow
                                      swoodrow@woodrowpeluso.com
                                      Patrick H. Peluso
                                      ppeluso@woodrowpeluso.com
                                      Taylor T. Smith
                                      tsmith@woodrowpeluso.com
                                      Stephen A. Klein
                                      sklein@woodrowpeluso.com
                                      Woodrow & Peluso, LLC
                                      3900 E. Mexico Avenue, Suite 300
                                      Denver, Colorado 80210
                                      Tel: 720-213-0675
                                      Fax: 303-927-0809

                                      *Attorneys for Plaintiff and the Class*